# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

### Case No. 8:25-cv-2416

PAINT NAIL BAR FRANCHISE COMPANY, LLC, a Florida limited liability company,

               Plaintiff,

v.

PRINCESSICA, LLC, a Florida limited liability company, and JESSICA HAWORTH, an individual,

               Defendants.

### VERIFIED COMPLAINT

Plaintiff, Paint Nail Bar Franchise Company LLC, sues Defendants, Princessica, LLC and Jessica Haworth, and alleges:

### JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction pursuant to 18 U.S.C. § 1836(b)(1) as to the claims asserted under the Defend Trade Secrets Act ("DTSA").

2.    This Court has original subject matter jurisdiction as to the claims other than those based on the DTSA, under 18 U.S.C. § 1836(b)(1), because those claims are so related to the claims brought under the DTSA that they form a part

of the same case or controversy.

3.     Further, an actual justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C §§ 2201-2202.

4.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Defendants are subject to the court's jurisdiction with respect to this action in this district, and pursuant to the parties' Franchise Agreement (defined below).

## PARTIES

5.     Plaintiff, Paint Nail Bar Franchise Company LLC ("Paint Nail Bar" or "Plaintiff"), is a Florida limited liability company, having a principal place of business in Sarasota County, Florida.

6.     Defendant, Princessica, LLC ("Princessica"), is a Florida limited liability company with a principal place of business in Venice, Florida.

7.     Defendant, Jessica Haworth ("Haworth" and, with Princessica, the "Defendants"), is an individual and resident of Florida.

## FACTS

### The Paint Nail Bar Franchise System

8.     Paint Nail Bar is the franchisor of a System providing a retail business offering beautiful, hygienic nail salons where guests are welcomed with affordable luxury services, exceptional sterilization and safety standards, and impeccable

2

customer service to the general public. Through and by virtue of a Trademark License Agreement with Mark Schlossberg, Paint Nail Bar licenses others to operate nail salons under the federally-registered trademarks "Paint Nail Bar" and "Paint Nail Bar A Luxury Nail Affair" (collectively, the "Marks").

9.    Through the expenditure of time, skill, effort, and money, Paint Nail Bar is the sole owner, and Paint Nail Bar as the sole licensor, have developed the Marks, which have been used in the development, organization, and operation of a System of nail bars offering salon services to the general public.

10.    Paint Nail Bar has entered into Franchise Agreements for the operation of Paint Nail Bars at various locations throughout the United States, pursuant to which Paint Nail Bar licenses others the right to operate Paint Nail Bars using the Marks and System.

11.    The Paint Nail Bar System consists of the manner in which the franchisee is licensed to operate the Paint Nail Bar nail salon, the method of doing business, and certain other trade secrets and proprietary information, as designated and adopted by Paint Nail Bar.

12.     Paint Nail Bar has developed the Marks and System for use in the operation of the licensed Paint Nail Bars, which include the following principal trademarks, which have been registered by Mr. Schlossberg on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark | Registration Number | Registration Date |
|------|---------------------|-------------------|
| PAINT NAIL BAR | 4874455 | December 22, 2015 |
| PAINT NAIL BAR A LUXURY NAIL AFFAIR | 5320334 | October 31, 2017 |

13.     The Marks and System have been used exclusively by Paint Nail Bar, and its designated licensees, in commerce in connection with the operation of Paint Nail Bars since 2016. Since that time, Paint Nail Bar has grown to over 30 locations in over a dozen states (including Defendants' formerly-franchised location).

14.     The Marks have become a valuable asset of substantial and inestimable worth to Paint Nail Bar. The Marks are a symbol of quality salon experience served by Paint Nail Bar. Paint Nail Bar has a vital economic interest in protecting its name and the Marks. The preservation and protection of its name and the Marks are essential the maintenance of the quality of Paint Nail Bars and the goodwill and reputation associated with them.

**The Franchised Business**

15.     On or about June 13, 2021, Paint Nail Bar entered into a Franchise Agreement with Haworth in connection with the operation of a Paint Nail Bar

located in Venice, Florida (the "Franchise Agreement"). A copy of the Franchise Agreement is attached hereto as <u>Exhibit A</u>.

16.    Prior to June 13, 2021, Haworth had no connection with the nail salon industry, was not employed in the nail salon industry, and had not run a nail salon.

17.    Pursuant to the Franchise Agreement, operated a Paint Nail Bar at 19790 Wellen Pike Boulevard, Suite 105, North Port, Florida 34293 (the "Franchised Business" or the "Salon").

18.    On September 8, 2021, Haworth formed Princessica for the purposes of operating the Salon. Subsequently, an Assignment was executed whereby the Franchise Agreement was assigned from Haworth to Princessica, and Princessica assumed the obligations of the Franchise Agreement. Haworth then signed a personal guaranty with respect to the Franchise Agreement.

19.    Following execution of the Franchise Agreement, and as required by same, Paint Nail Bar provided sufficient and ample training to the Defendants, and their employees, including pre-opening training, post-opening training, and Paint Nail Bar conducted multiple national Franchise Summits attended by the Defendants.

20.    The Salon commenced operations as a Paint Nail Bar in or about August 2023.

## **The Franchise Agreement's In-Term and Post-Termination Obligations**

21.    The Franchise Agreement includes a number of important in-term

and post-termination provisions, obligations, and prohibitions.

22.    For instance, the Franchise Agreement provides, in relevant part:

> 5.9    <u>Exclusive Relationship</u>.  We have granted the Franchise to you in consideration of and reliance upon your (and your Owners') agreement to deal exclusively with us. We would be unable to protect the Confidential Information against unauthorized use or disclosure or to encourage a free exchange of ideas and information among our franchisees if you (or your Owners) were permitted to hold interests in or perform services (other than you serving as an employed nail technician providing services directly to clients for a salon owned by others) for a nail salon or one or more similar facilities or businesses that offer the same or similar products and services customarily offered by PAINT Nail Bar® Salons, or an entity that grants franchises or licenses for any of these types of businesses, other than the Salon and other PAINT Nail Bar® Salons (a "**Competitive Business**").  You agree that, during the Term, neither you nor any of your Owners, directors, or officers (nor any of your or your Owners', directors', or officers' spouses) will:
>
>> (a)    have any direct or indirect interest as an owner whether of record, beneficially or otherwise perform or engage in services as a director, officer, manager, employee, consultant, representative, or agent for, a Competitive Business (this restriction is not applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent less than 3% of the number of shares of that class of securities issued and outstanding);
>>
>> (b)    directly recruit or solicit for hire any of our employees or the employees of any PAINT Nail Bar® Salon without obtaining our or the employer's prior written permission (general advertising or solicitation directed to the public in general is not restricted;
>>
>> (c)    direct any prospective or existing business or economic opportunities away from us, our affiliate, the Salon or any other PAINT Nail Bar® Salon to a Competitive Business; or
>>
>> (d)    perform any act prejudicial or injurious to the goodwill associated with the Marks.

<u>See</u> Exhibit A at § 5.9.

23.    The Franchise Agreement further provides, with respect to post-

termination obligations:

> 13.3    <u>Confidential Information</u>.  Upon termination or expiration of this Agreement, you and your Owners will immediately cease to use any of our Confidential Information in any business or otherwise and return to us all copies of the Manuals and any other confidential materials that we have loaned to you.

<u>See</u> Exhibit A at § 13.3.

24.    The Franchise Agreement also provides, with respect to post-termination obligations:

> 13.4    <u>Covenant Not to Compete</u>.  Upon termination of this Agreement for any reason or expiration of this Agreement, you agree that, for 2 years beginning on the effective date of termination or expiration(subject to extension as provided below), neither you nor any of your Owners, will
>
>     (a)    have any direct or indirect, controlling or non-controlling interest as an owner whether of record, beneficial or otherwise in any Competitive Business which is located or operating at the Site or within a 5-mile radius of the Site, or any other PAINT Nail Bar® Salon; provided that this restriction will not be applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent less than 3% of the number of shares of that class of securities issued and outstanding, or
>
>     (b)    perform services as a director, officer, manager, employee, consultant, representative or agent for a Competitive Business which is located or operating at the Site or within a 5-mile radius of the Site.
>
> The time period during which these restrictions apply will be automatically extended, with respect to all persons that this Section covers, for each day during which any person covered by this Section is not complying fully with this Section.  You acknowledge that you and your Owners possess skills and abilities of a general nature and have other opportunities for exploiting these skills.  Consequently, our enforcing the covenants made in this Section will not deprive you or your Owners of personal goodwill or the ability to earn a living.

<u>See</u> Exhibit A at §13.4

## <u>Defendants' Default and Breach of the Franchise Agreement, and the Termination of Same</u>

25.    On August 28, 2025, Defendants – through counsel – sent a demand letter to Plaintiff, demanding that the Franchise Agreement be "rescinded in its entirety" on top of a demand of $975,000 in "damages incurred" (the August Letter"). A copy of the August Letter is attached hereto as <u>Exhibit B</u>.

26.    While Defendants sent the August Letter, they notably avoided an important fact: Defendant, Haworth, actively tried to obtain employment with Plaintiff and, only after such employment was denied (in light of Defendants' shortcomings as a franchisee), did Defendants retain counsel to complain about their franchise relationship with Plaintiff. Such efforts are wildly inconsistent with

the allegations contained in the August Letter and the demands set forth therein.

27.    In any event, a response to the August Letter was sent on September 4, 2025 (the "September Response"), in which Plaintiff refuted each of the claims set forth in the August Letter and noted that "PNB rejects any claim of rescission as legally and factually meritless." A copy of the September Response is attached hereto as Exhibit C.

28.    Despite the September Response, on or about September 8, 2025, Defendants began operating a competitive nail salon business in violation of their Franchise Agreement's in-term and post-termination non-competition provisions.

29.    Specifically, just four days after receiving the September Response, Defendants commenced operating "The Polished Palm" from their formerly-franchised PAINT Nail Salon location.

30.    This competitive nail salon **admittedly** uses the same system, training, staff, support, appearance, and way of doing business as the formerly-franchised Paint Nail Bar Salon. In Defendants' own words:



(visited on September 8, 2025)

31.    While Defendants appear to have removed trademarks associated with the Paint Nail Bar Salon, they are operating an identical business – in direct contravention of their contractual obligations.

32.    Following confirmation of Defendants' violative conduct, Plaintiff (through counsel) issued a Notice of Termination to Defendants in light of their violations of the Franchise Agreement, amongst other relevant provisions. A copy of the Notice of Termination is attached hereto as Exhibit D.

33.    As set forth in the Notice of Termination, Defendants had (and have) a variety of post-termination obligations, including, but not limited to, those set forth in Section 13 of the Franchise Agreement.

34.    Upon the termination of the Franchise Agreement, Defendants failed to return the Confidential Information described in Section 13.3 of the Franchise Agreement.

35.    Notwithstanding the Notice of Termination, and notwithstanding their post-termination contractual obligations, as of the filing of this Complaint, Defendants continue to operate a Competitive Business (as defined in the Franchise Agreement).

36.    Specifically, notwithstanding the termination of the Franchise Agreement, Defendants, jointly and severally have continued operating the formerly-franchised Paint Nail Bar salon using the Paint Nail Bar System (as defined in the Franchise Agreement), without Paint Nail Bar's authorization, as

evidenced by information posted online by Defendants:



37.     But Plaintiff's photos are superfluous, as Defendants are admittedly competing.

38.     Additionally, Defendants continue to use the same phone number for The Polished Palm as they used in their formerly-franchised Paint Nail Bar Salon.

39.     Beyond this, Defendants also using information gathered while they were Paint Nail Bar franchisees. Specifically, upon information and belief, Defendants downloaded from Plaintiff's software platform (called Booker) and uploaded it to their new software platform (called Boulevard).

40.    Upon further information and belief, using this customer information (i.e., Confidential Information), Defendants are contacting the Paint Nail Bar's customers and seeking to solicit their business, in violation of the Franchise Agreement.

41.    Moreover, the Boulevard system allows customers to book services with specific technicians of Defendants, all of whom appear to have worked for Defendants while Defendants operated a PAINT Nail Bar.

42.    It is clear that – other than removing the Paint Nail Bar name – The Polished Palm is identical to the formerly-franchised Paint Nail Bar Salon.

43.    Because Paint Nail Bar validly terminated the Franchise Agreement due to Defendants' non-curable defaults, Defendants are required to abide by the post-termination obligations of the Franchise Agreement, including the non-competition obligation.

44.    As of the date of this filing, Defendants are intending to continue operating (and continue to operate) the formerly-franchised nail salon, using the Marks and System, in violation of the post-termination obligations, as evidenced above.

45.    Defendants' failure to abide by the post-termination obligations required under the Franchise Agreement, and continued use the same technicians, training, and System, in connection with the operation of a salon at the site of the formerly-franchised nail salon has caused, and is continuing to cause, irreparable

harm.

46.    Pursuant to Section 15.4 of the Franchise Agreement, and the Defend Trade Secrets Act, Plaintiff is entitled to recover, as the prevailing party, its costs and expenses, including legal fees and expenses, in connection therewith, against Defendants.

47.    Defendants have not voluntarily ceased their unlawful acts, thus necessitating the present lawsuit.

**COUNT I:**
**BREACH OF CONTRACT**
**(Post-Termination Provisions – Injunctive Relief)**

48.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 hereof.

49.    The Franchise Agreement is a valid contract executed by Paint Nail Bar and Haworth, and as assigned to Princessica.

50.    The Defendants breached the Franchise Agreement by continuing to use the Paint Nail Bar System following termination of the Franchise Agreement.

51.    The Defendants breached the Franchise Agreement by continuing to operate a nail salon at the site of the formerly-franchised Paint Nail Bar nail salon, in violation of the covenants contained in the Franchise Agreement.

52.    As a result of the Franchisee Defendants' willful and intentional actions, the Defendants have caused and, unless restrained and enjoined by this

Court, will continue to cause irreparable harm and injury to Paint Nail Bar.

53.     This is confirmed by the acts of other franchisees of the PAINT Nail Bar franchise system, using the same counsel to slowly remove franchisees from the franchise system.

54.     It is vitally important to Plaintiff's franchise system, and Plaintiff's other franchisees, that the Court enforce post-termination restrictive covenants and obligations in the Franchise Agreement, which expressly prohibit Defendants from operating their competing nail salon using Plaintiff's Confidential Information (as defined in the Franchise Agreement).

55.     Plaintiff has no means of enforcing the post-termination covenants and obligations in the Franchise Agreement – and remedying the irreparable harm that Plaintiff has suffered, and continues to suffer – other than to seek injunctive relief from this Court.

56.     Attorneys' fees and cost are permitted under the Franchise Agreement.

## COUNT II:
## DEFEND TRADE SECRETS ACT

57.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 hereof.

58.    The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., provides a private civil action for misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

59.    Plaintiff owns numerous trade secrets, including, but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and phone number, related to products, proprietary contracts and contacts, and services used in interstate commerce.

60.    Each of Plaintiff's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person, who can obtain economic value from the disclosure or use of the information.

61.    Plaintiff's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees associated with Plaintiff.

62.    During the time period described above, Plaintiff's trade secrets were disclosed to Defendants for the sole purpose of expanding the Paint Nail Bar franchise system.

63.    Plaintiff has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining their competitive advantage in the marketplace.

64.    The aforementioned agreements explicitly provide for the protection of such trade secrets, as set forth herein, including requiring the return of all originals and copies of the confidential Operations Manual, and files and records to Plaintiff upon expiration, termination, or nonrenewal of the Franchise Agreement; requiring former franchisees and their representatives to maintain the confidentiality of the information; and requiring former franchisees and their representatives to never use the information for any purpose other than operating a franchised business pursuant to the Franchise Agreement.

65.    Plaintiff, and Defendants agreed, that upon expiration, termination, or nonrenewal of the agreements they would never use, disclose, or permit the use or disclosure of Plaintiff's trade secrets in any manner whatsoever.

66.    Without authority or consent from Plaintiff, Defendants are using the business know-how, phone numbers, and customer contact information that they obtained while operating an improperly-competitive business for themselves, thereby misappropriating Plaintiff's trade secrets.

67.    Upon information and belief, Defendants used and are utilizing Plaintiff's confidential system and materials after the improper termination of the

Franchise Agreement, and Plaintiff has not (and would not) consent to or authorized such use.

68.    Defendants intentionally, and without Plaintiff's permission or authorization, misappropriated and/or disclosed Plaintiff's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Plaintiff by, for example, causing Plaintiff to lose any customers successfully solicited by Defendants.

69.    As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Plaintiff's trade secrets, Plaintiff has suffered and will continue to suffer irreparable injury.

70.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Plaintiff's trade secrets should be enjoined from further disclosure or use of Plaintiff's trade secrets.

71.    Defendants' conduct in misappropriating Plaintiff's trade secrets was, and continues to be, willful and malicious, warranting an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

# PRAYER[1]

WHEREFORE, Plaintiff requests judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A.    The entry of a temporary, preliminary, and permanent injunction prohibiting Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concern with them, from:

  i.    Operating a competing nail salon in Defendants' former Paint Nail Bar franchise location or within 5 miles thereof, for a period of two years from September 9, 2025, and extending such period for the amount of time during which Defendants are willfully violating their covenants;

  ii.    Maintaining, using, or disclosing the Operations Manual; and

  iii.    Assisting, aiding, or abetting another person or business entity in engaging in or performing any of the activities enumerated above.

---

[1]    Pursuant to Section 15.6 of the Franchise Agreement, Plaintiff intends to file an Arbitration claim against Defendants for damages sustained (other than legal fees pursuant to Section 15.4 of the Franchise Agreement and/or the Defend Trade Secrets Act,). Thus, Plaintiff does not intend to waive its right to damages sustained by not raising same here but, rather, will file such claim before the American Arbitration Association. Rather, because of the relief sought, the claims brought herein are exempt from the Franchise Agreement's arbitration clause.

B.    The entry of a temporary, preliminary, and permanent injunction ordering Defendants to return all Manuals and Confidential Information to Plaintiff;

C.    Awarding reasonable attorneys' fees and costs pursuant to Section 15.4 of the Franchise Agreement and/or the Defend Trade Secrets Act,

F.    Awarding interest as allowed by law, and

G.    Awarding such other and further relief as the Court deems just and proper.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff will be represented at trial by Matthew Margolis, Esquire.

Dated: September 9, 2025                  Respectfully Submitted,

By:  *Matthew Margolis*
        Matthew Margolis (FL Bar: 1002501)
        MARGOLIS PLLC
        700 Rosemary Avenue, #204
        West Palm Beach, Florida 33401
        Tel: 561-203-9643
        Email: matthew@margolispllc.com

        Thomas D. Emmons (*Pro Hac Vice* forthcoming)
        THE FRANCHISE FIRM LLP
        225 Wilmington West Chester Pike, Suite 200
        Chadds Ford, Pennsylvania 19317
        Tel: 215-965-1553
        Email: tom@thefranchisefirm.com

        *Attorneys for Plaintiff,*
        *Paint Nail Bar Franchise Company, LLC*

## **<u>VERIFICATION</u>**

Mark Schlossberg, being duly sworn, deposes and says:

I am Chief Executive Officer of Plaintiff. I have read the foregoing Verified Complaint and know the contents thereof, and state that the allegations are true and correct. I based this verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true and correct. The grounds of any knowledge, information, and belief, are derived from my position as Chief Executive Officer, any personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, within limitation, my review of Plaintiff's records and conversations with Plaintiff's employees.

DocuSigned by:

*Mark Schlossberg*

FDF60784B584439...

_____

Mark Schlossberg